IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID J. AUSTIN,                )
                                )
            Plaintiff,          )
                                )
      v.                        )     1:12CV998
                                )
PHE, INCORPORATED, AMY PEER,    )
AL COLE, JERRY CRAIG, TOM       )
UNDERWOOD, PHIL HARVEY, and     )
JOHN LAURES,                    )
                                )
            Defendants.         )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1), filed in conjunction with Plaintiff's pro se Complaint (Docket Entry 2). The Court will grant Plaintiff's request to proceed as a pauper for the limited purpose of recommending dismissal of this action, under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), as frivolous and for failure to state a claim.

LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours

& Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – (i) is frivolous or malicious; [or] (ii) fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2).

As to the first of these grounds for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). In assessing such matters, this Court may "apply common sense." Nasim, 64 F.3d at 954; see also Nagy, 376 F.3d at 256-57 ("The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the

2

totality of the circumstances, of all factors bearing upon the frivolity of a claim." (some internal quotation marks omitted)).

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(b)(ii), when the complaint does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557 (internal quotation marks omitted)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id.</u>[1]

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read <u>Erickson</u> to undermine <u>Twombly</u>'s requirement that a pleading contain more than labels and conclusions," <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); <u>accord</u> <u>Atherton v. District of Columbia Off. of Mayor</u>, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . .
(continued...)

DISCUSSION

The Complaint in this case alleges that Plaintiff's employer unlawful discriminated against Plaintiff on the basis of his gender and retaliated against him for complaining of the alleged discrimination, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). (Docket Entry 2 at 2-4.) It further alleges discrimination on the basis of Plaintiff's age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). (Docket Entry 2 at 4.)

As an initial matter, "[b]efore a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the [Equal Employment Opportunity Commission ('EEOC')]." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Moreover, "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Id.; see also Brandford v. Shannon-Baum Signs, Inc., 519 F. App'x 817, 819 (4th Cir. 2013) (recognizing failure to exhaust administrative remedies in ADEA context similarly deprives federal

---

¹(...continued)
'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

courts of subject matter jurisdiction). Except as to claims of retaliation for the filing of an EEOC charge, see Jones, 551 F.3d at 301-02 (discussing Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992)), the United States Court of Appeals for the Fourth Circuit has "long held that receipt of, or at least entitlement to, a right-to-sue letter [from the EEOC] is a jurisdictional prerequisite <u>that must be alleged in a plaintiff's complaint</u>." Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (emphasis added); see also Brandford, 519 F. App'x at 819 (finding same in ADEA context).

The body of Plaintiff's Complaint does not make any mention of filing a charge of discrimination with the EEOC, much less the receipt of a right-to-sue letter. (Id. at 1-5.) Nor does it allege retaliation for filing an EEOC charge. (Id.) Accordingly, in light of Davis, this Court lacks subject matter jurisdiction over Plaintiff's Complaint and the obvious nature of this deficiency renders this action frivolous.

Furthermore, the Complaint also fails to state a claim upon which relief can be granted. To establish discrimination or retaliation in employment under Title VII, a plaintiff may proceed "in one of two ways. First, he may present direct evidence of his superiors' discriminatory [or retaliatory] intent. Second, he may attempt to satisfy the test specified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which allows him to raise an

inference of discriminatory intent by showing that he was treated worse than similarly situated employees of other [relevant groups]." Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2003) (internal parallel citation omitted).[2] Plaintiff's Complaint does not allege factual matter indicating the existence of direct evidence of discrimination based on gender and/or retaliation for complaining about such discrimination. (See Docket Entry 2.) Accordingly, Plaintiff must satisfy the McDonnell Douglas test, which first requires establishment of a prima facie case. See Coleman v. Maryland Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010), aff'd in other respects, ___ U.S. ___, 131 S. Ct. 1327 (2012).

"[T]he elements of a prima facie case of discrimination . . . are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Id. Firstly, Plaintiff's Complaint does not allege that Plaintiff satisfactorily performed his job. (See Docket Entry 2 at 2-5.)[3] Moreover, the Complaint's allegations that Defendants declined to transfer Plaintiff to a different team at his request

---

[2] Although McDonnell Douglas arose in the discrimination context, its framework also applies to retaliation claims. See Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 n.1 (4th Cir. 2000).

[3] In fact, a letter written by Plaintiff and filed with his Complaint that documents the confrontation alleged in the Complaint suggests that the team leader against whom Plaintiff alleges discrimination was not happy with Plaintiff's job performance. (See Docket Entry 2-2 at 1-2.)

6

do not constitute adverse employment actions. (Id.) "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted). Plaintiff's Complaint does not suggest that Defendants' failure to transfer Plaintiff affected the "terms, conditions, or benefits of [P]laintiff's employment," id. (See Docket Entry 2 at 2-5.)

To the extent Plaintiff's Complaint attempts to articulate a hostile work environment claim, see E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009) ("Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or sex. Since an employee's work environment is a term or condition of employment, Title VII creates a hostile work environment cause of action." (internal citations and quotation marks omitted)), such claim also fails. In order to prevail on a Title VII hostile work environment claim, a plaintiff must show the underlying conduct was "(1) unwelcome, (2) based on [the plaintiff's] gender or race, (3) sufficiently severe or pervasive to alter the conditions of [his or] her employment and create an abusive atmosphere, and (4) imputable to [the employer]." Id. at 175. Plaintiff's Complaint only describes one instance of allegedly harassing conduct:

7

Plaintiff's female team leader allegedly made a comment "suggesting that in place of a transfer off her team [Plaintiff] should masturbate, and making a hand gesture of same." (Docket Entry 2 at 2.) In analyzing whether conduct qualifies as "severe or pervasive" enough to alter the conditions of employment, a court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks omitted).

Although a single, sufficiently severe incident could create a hostile work environment, see Okoli v. City of Baltimore, 648 F.3d 216, 220 & n.5 (4th Cir. 2011), the lone event described in the Complaint does not rise to this level. "Title VII does not create a 'general civility code' in the workplace; it only proscribes behavior that is 'so objectively offensive as to alter the 'conditions' of the victim's employment." Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 335 (4th Cir. 2010) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). Despite its sexual overtone, a single rude comment of the sort alleged does not establish a hostile work environment for purposes of Title VII. See, e.g., Mercer v. Cook Cnty., Ill., __ F. App'x __, __, 2013 WL 2472569, at *4 (7th Cir. June 10, 2013) (unpublished) (finding

8

supervisor's comment to plaintiff to "go play with yourself," even in connection with other incidents, "not severe or pervasive enough to create a hostile work environment").

The Complaint's claim of retaliation exhibits similar deficiencies. "The elements of a prima facie retaliation claim . . . are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190. The Complaint alleges that Plaintiff informed a number of supervisors by letter of "repeated sexual discrimination and sexual harrassment [sic]." (Docket Entry 2 at 3-4.) However, the Complaint's characterization of the interaction between Plaintiff and his team leader differs markedly from Plaintiff's description in the letter of complaint he sent to the supervisors. (Compare id. at 2, with Docket Entry 2-2 at 1.) The letter states that, in the context of explaining why she believed Plaintiff needed "instruction in [his] greeting to the customers," the team leader conjugated a verb in Spanish such that it changed the phrase from one meaning "How can I help you?" to one meaning "You can go help yourself," the latter being a "subtle" and "rude" way of telling someone to "go masturbate." (Docket Entry 2-2 at 1.)

According to Plaintiff, he viewed the team leader's comment in this regard as implying, "Go jack off, you're never leaving my team." (Id. at 1-2.) The letter does not make any allegations of

9

sexual discrimination or even harassment, much less "repeated" conduct, but instead characterizes the team leader's comment as "rude" (id.) and requests a new team leader "who is not openly and rudely hostile" to Plaintiff (id. at 2). A supervisor reading Plaintiff's letter would not reasonably infer from it a complaint of sexual discrimination or harassment - rather, it describes a failed work relationship. The instant Complaint's recharacterization of the interaction cannot retroactively convert the letter into a complaint of sexual discrimination. Thus, the Complaint fails to allege that Plaintiff engaged in a protected activity.

Finally, Plaintiff's Complaint also alleges that Plaintiff "was [the] oldest member of [his team leader's] team and believe[s] [he] was additionally discharged for that reason." (Docket Entry 2 at 4.) This brief, conclusory statement represents the only mention of age discrimination in the Complaint, constitutes merely "an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678, and thus fails to state a claim for relief, see id.[4]

---

[4] In addition, Plaintiff's Complaint names as Defendants a number of individuals in addition to his employer. (See Docket Entry 2 at 1-2.) Neither Title VII nor the ADEA provide for such individual liability. See Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010) ("Title VII . . . and the ADEA . . . do not provide for causes of action against defendants in their individual capacities."). This clear legal impediment makes the claims against those Defendants subject to dismissal on grounds of
(continued...)

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis and Affidavit/Declaration in Support (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) for lack of subject-matter jurisdiction and, alternatively, for failure to state a claim.

                                          /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                                       **United States Magistrate Judge**

November 1, 2013

---

[4](...continued)
frivolousness and failure to state a claim.